HOWARD GRIFFITH v. GEORGE MELBOURN AND
FARM SERVICE COOPERATIVE

4613                                    430 S.W. 2d 862

Opinion delivered September 3, 1968

*J. R. Crocker* and *James R. Hale* for appellant.

*Wade & McAllister* for appellee.

LYLE BROWN, Justice.    This suit was brought by
Howard Griffith, plaintiff-appellant, against his em-
ployers, George Melbourn and Farm Service Coop-
erative, to recover severance pay.    The trial court
ruled that Farm Service, through its manager, Mel-
bourn, had agreed to pay Griffith one-half salary for
four months after discharge; however, the court denied
recovery on the finding that Griffith had pledged to
refrain from remonstrative conduct and he violated that
agreement.    The appeal poses two questions, namely,

(1) was there a valid contract between the parties, and

(2), if so, did Griffith violate it?

For approximately fifteen years Howard Griffith had been regularly employed by Farm Service Cooperative. On August 20, 1966, Melbourn, in conference with Griffith, informed the latter he was being discharged. Griffith was advised he would be on vacation for the remainder of the month with full pay; that he would be paid the annual bonus usually given key employees; and that for four months following his vacation he would be paid one-half his regular salary in the form of "severance pay." It is not claimed that severance pay was part and parcel of the original employment agreement. It was a voluntary practice instigated by Melbourn when he became manager in 1964. Two employees previously severed from work had been given similar benefits by Melbourn and the directors of Farm Service ratified his actions.

It is undisputed that Melbourn imposed a condition on Griffith to the grant of severance allowance. Unfortunately those conditions were not reduced to writing and only the two parties — Melbourn and Griffith — participated in the conversation. Griffith said he was told that the payments were conditioned that he refrain from complaining to the board members about his discharge and not to try to get Melbourn fired. Melbourn asserted the substance of the conditions to be that Griffith not create dissension among the board members or the employees and otherwise refrain from brewing trouble. Suffice it to say that the trial court found Melbourn's version to be the correct one. The testimony was sufficient to support that finding.

The bonus and two of the monthly severance payments were made. It was Melbourn's decision to decline delivery of the severance payments for the last two months on the grounds that Griffith was protesting to the board members and discussing salary scales with employees. That decision brought on this suit for $800.

Was there a valid contract between Farm Service, acting through Melbourn, and its discharged employee, Griffith? We think so. We start with the premise that initially, under his contract of employment, severance payments were not involved. His tenure of employment was at the will of the Cooperative and that board permitted its manager to handle matters of fringe benefits in his discretion. Griffith believed his discharge to be without merit. There were two courses open to him. First, he could decline the offer of fringe benefits and appeal to the board of directors of the Cooperative with the view of having Melbourn's decision reversed. Alternatively, he could accept the immediate benefits totalling $2364 and close the incident. Griffith testified that he accepted Melbourn's proposition and further asserted that he lived up to it. The acceptance of the terms of the severance "settlement" constituted a contract with valid consideration. It was a benefit paid and to be paid Griffith, for which he waived his right of protest. See *First National Bank* v. *Hasty*, 183 Ark. 519, 36 S.W. 2d 967 (1931). In *Hirsch* v. *Associated Amusement Machine Operators of New York, Inc.*, 127 N.Y.S. 2d 82 (1953), the discharged employee submitted his resignation allegedly on the promise that he would receive severance pay. There it was held that the surrender of his position constituted sufficient consideration for the promise to make severance payment.

Finally, did the employee-appellant violate the non-protest agreement? The trial court so found and we find substantial evidence to sustain that holding. Mr. Griffith called on the president of the Cooperative some three times. His discharge was discussed and Griffith urged a special meeting of the board of directors. Griffith pointed up alleged salary disparities between employees. Another board member related internal operation problems which had been called to his attention by Griffith. Joe Reed, president of Cooperative, testified that the continued discussion of Griffith's discharge resulted in a number of men coming to him and in-

quiring about it, which to his opinion caused confusion among members. The recited incidents are alleged to have occurred after Griffith's discharge and resulted in the suspension of severance payments. In all, five of the directors of the Cooperative were contacted by Griffith.

Affirmed.